**Mike D. LEE d/b/a Mid–South Investment, Plaintiff-Appellant,**

v.

**WAL–MART STORES, INC., Defendant–Appellee.**

No. 90–4649.

United States Court of Appeals, Fifth Circuit.

Oct. 4, 1991.

Jesse R. Pierce, Jack O'Neill, Warren W. Harris, Porter & Clements, Houston, Tex., for plaintiff-appellant.

David R. McAtee, James D. Piel, Gibson, Dunn & Crutcher, Dallas, Tex., Donald W. Cothern, Gregory D. Smith, Tom Henson, Ramey, Flock, Jeffus, Crawford, Harper & Collins, Tyler, Tex., for defendant-appellee.

Before GOLDBERG, HIGGINBOTHAM, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Plaintiff-appellant Mike D. Lee sued Wal–Mart Stores, Inc., seeking damages for two Wal–Mart shopping center construction deals gone awry. The case was removed to the United States District Court for the Eastern District of Texas and tried to a jury on theories of breach of fiduciary duty and fraud or duress[1]. In their answers to complex special interrogatories, the jury found that Wal–Mart had breached its fiduciary duty to Lee and committed fraud or duress in connection with each deal, but they also found that Lee was estopped to assert his claims; that he had ratified Wal–Mart's acts on one of the deals, but not on the other; and that he did not waive his claims.[2] The trial court entered judgment for Wal–Mart on the verdict, and it later denied Lee's motion for judgment n.o.v. On appeal, we have determined that there was no fiduciary relationship between Lee and Wal–Mart under Texas law. We reverse for a new trial, however, because that part of the jury's verdict relating to economic duress may have afforded Lee a recovery.

## I.

## BACKGROUND

Lee is an experienced real estate developer who for more than 10 years built shopping centers in small Texas towns. Usually, Wal–Mart discount stores were Lee's anchor tenants. Lee testified that he purchased land and built nine stores at Wal–Mart's direction based on the oral approval of Wal–Mart's officers or their commitment letters, only later signing formal leases.[3] He could follow this risky policy confidently because of Wal–Mart's policy of entering into "break-even" leases with its developers, the rental rates of which were based on standard calculations. The long-term lease was designed to reimburse Lee an amount equal to Wal–Mart's "break-even" cost on the development, *i.e.*, a cost that was only marginally, if at all, profitable to Lee because certain of Wal–Mart's costs,

---

**1.** Interrogatories concerning Wal–Mart's alleged failure to perform "any agreement" to execute a lease on the Daingerfield, Texas, property were answered in Lee's favor by the jury. Lee does not, however, rest his request for entry of judgment on those interrogatories.

**2.** During its charge conference, the trial court presciently predicted the difficulty of resolving conflicts in the jury's answers to special interrogatories. The following discussion vindicates this concern.

**3.** In a variation on this theme, Lee and Wal–Mart jointly developed a property in Carrizo Springs, in which Wal–Mart built its own store, and Lee built a shopping center around it. On other occasions, Lee took options on land that Wal–Mart later purchased to build its own Texas stores, paying Lee a real estate broker's commission for his efforts.

such as interest, would be lower than those of a medium-scale developer. The bulk of Lee's profits derived from favorable lease terms for the adjacent shopping centers he built and owned next to the Wal–Mart, which were considered highly desirable retail space. Two transactions that ultimately did not work out in the expected manner form the basis of this lawsuit—the Daingerfield and Paris transactions.

Lee testified that at Wal–Mart's urging he bought land in Daingerfield for a shopping center in December 1984. A March, 1985 commitment letter indicated that Wal–Mart was prepared to enter into a lease on standard terms, but the deal kept being deferred. Wal–Mart began to vacillate. First, its representative told Lee that the Daingerfield site had not been approved. Later, Lee was told Wal–Mart wanted to purchase the site. Finally, Wal–Mart submitted a proposed lease to Lee offering much lower rent and smaller square footage on which the rent would be calculated. Lee signed the lease in August 1986, but when he became unable to obtain financing to begin construction, Wal–Mart cancelled the lease. Acknowledging the cancellation, Lee signed a lease termination agreement.

In Paris, according to Lee, Wal–Mart encouraged him to acquire land in order to expand an existing Wal–Mart store he owned. Although Wal–Mart originally agreed in principle to a break-even rental rate, it later offered a much lower rate. Needing a lease to obtain bank financing, Lee agreed to the lower rate. Because the lease was so unfavorable, Lee contended, he could not obtain financing even with the lease. Ultimately, Lee agreed to sell most of the newly acquired Paris property to Wal–Mart. As part of the sale, Lee signed lease termination agreements.

Having found that Lee and Wal–Mart had a fiduciary relationship, and that Wal–Mart breached its fiduciary duty to Lee, the jury awarded damages totalling $5,125,000 for the two transactions. The jury also found that Lee signed both the leases and the lease termination and purchase agreements because of Wal–Mart's fraud or duress. They found, however, that Lee did not waive his claims, but he was estopped to assert claims against Wal–Mart and had ratified the Paris transaction but not the Daingerfield transaction. On the basis of the jury's estoppel and ratification findings, the court entered judgment for Wal–Mart and ordered that Lee take nothing.

## II.

## FIDUCIARY RELATIONSHIP

As appellant, Lee's position hinges on the jury finding of a fiduciary relationship between himself and Wal–Mart. Because of this finding, Lee asserts, the defenses of estoppel and ratification are meaningless under Texas law unless accompanied by a finding that the ultimate transactions between Wal–Mart and Lee were fair.[4] The findings of fraud or duress [5] also rest at

---

4. Lee relies on two Texas cases for this proposition: *Thywissen v. Cron,* 781 S.W.2d 682, 686 (Tex.Civ.App.—Hou. [1st Dist.] 1989, writ denied); and *Trevino v. Brookhill Capital Resources, Inc.,* 782 S.W.2d 279, 282 (Tex.Civ. App.—Hou. [1st Dist.] 1989, writ denied). The district court rejected Lee's argument because the Texas Supreme Court has permitted estoppel and ratification as defenses in a case involving former medical partners who unquestionably were fiduciaries. *Daniel v. Goesl,* 341 S.W.2d 892, 895 (1961). Recent Texas cases implicitly recognize the viability of defenses such as estoppel and ratification to claims between fiduciaries. *Spangler v. Jones,* 797 S.W.2d 125, 129 (Tex.Civ.App.—Dallas 1990); *Johnson v. J. Hiram Moore, Ltd.,* 763 S.W.2d 496, 499 (Tex.Civ. App.—Austin 1988, writ denied).

5. SPECIAL INTERROGATORY NO. 9
DO YOU FIND FROM A PREPONDERANCE OF THE EVIDENCE THAT PLAINTIFF EXECUTED THE 1986 LEASE AGREEMENT AND THE "LEASE TERMINATION AND SURRENDER OF LEASE" ON THE DAINGERFIELD TRANSACTION AS A RESULT OF DURESS OR FRAUD BY DEFENDANT? ON THIS ISSUE THIS PLAINTIFF HAS THE BURDEN OF PROOF.
(ANSWER "YES" OR "NO.")
ANSWER: YES
SPECIAL INTERROGATORY NO. 11
DO YOU FIND FROM A PREPONDERANCE OF THE EVIDENCE THAT PLAINTIFF EXECUTED THE 1986 LEASE AGREEMENT, THE PURCHASE AGREEMENT, AND THE TWO "LEASE TERMINATION AND CANCEL-

least partly on special standards of conduct related to fiduciaries. Thus, if the facts do not establish a fiduciary relationship under Texas law, much of Lee's position fails.

Because it upheld the jury's finding of estoppel regardless of Wal–Mart's fiduciary status, the district court did not need to reach the sufficiency of the evidence of a fiduciary relationship. We do,[6] largely impelled by the Texas Supreme Court's recent decision in *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.,* —— S.W.2d ——, 34 Tex.S.Ct.J. 647 (Tex.1991). We must apply that decision to the facts found by the jury in the light most favorable to Lee, and we may not sustain Wal–Mart's motion for judgment n.o.v. unless "the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict...." *Boeing, Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (*en banc*). Even judged by this exacting standard, we conclude that Lee and Wal–Mart did not have "a confidential relationship which would give rise to a fiduciary duty." *Crim Truck,* —— S.W.2d ——.

According to the Texas Supreme Court, "Crim Truck and Tractor's relationship with Navistar ... began in 1943. The parties enjoyed a mutually beneficial working relationship for years before reducing their agreement to writing in 1958." *Id.* at ——. In 1976, Navistar "decided not to renew the Crims' franchise agreement. The parties continued to do business under the terms of the expired contract [for three years before executing a new contract]." *Id.* at —— n. 1. One of the owners of Crim Truck "testified that he believed the relationship with Navistar was one of mutual confidence and trust." *Id.* at ——. Finally, the most recent contract between the parties recited that it was "a personal agreement, involving mutual confidence and trust." *Id.* at —— n. 5. Notwithstanding this evidence, the court concluded, as a matter of law, that the parties had no confidential relationship with one another.

█ That conclusion is controlling here. The Texas Supreme Court rejected precisely the same arguments Lee makes in this case. Lee argues that the facts "show a relationship based on repeated transactions in which the parties relied on the standard practices that had developed between them;" he also asserts that Lee and Wal–Mart had a profitable business relationship while it lasted. The success of the relationship was due in part to Lee's willingness to make a commitment of his time and money to a potential Wal–Mart project prior to obtaining from Wal–Mart a specific return commitment in writing. Without any writing, Wal–Mart would have Lee buy or take an option in his own name on land that Wal–Mart needed. As an experienced and savvy developer of property, Lee knew or should have known that such was a risky practice. Lee's brief characterizes the working relationship thus: "Wal–Mart had to trust Lee not to sell the land to a higher bidder, and Lee had to trust Wal–Mart to sign a lease at terms that would allow Lee to pay for the land and building." *Crim Truck* held: "The fact that one businessman trusts another, and relies upon his promise to perform a contract, does not [give] rise to a confidential relationship." *Id.* at ——. According to Lee, the facts also show that Lee and Wal–Mart had repeatedly dealt informally with each other in a series of similar transactions over a period of ten years. *Crim Truck* held: "Neither is the fact that the relationship has been a cordial one, of long duration, evidence [of] a confidential relationship." *Id.*

*Crim Truck* reaffirmed that "a party to a contract is free to pursue its own inter-

---

LATIONS" ON THE PARIS TRANSACTION AS A RESULT OF DURESS OR FRAUD BY DEFENDANT? ON THIS ISSUE THE PLAINTIFF HAS THE BURDEN OF PROOF.
(ANSWER "YES" OR "NO.")
ANSWER: YES

**6.** In addition to defending against Lee's attacks on the district court's judgment, Wal–Mart re-

peatedly challenged the jury's antecedent finding that a fiduciary relationship existed between Lee and Wal–Mart. *Cf. Hoyt R. Matise Co. v. Zurn,* 754 F.2d 560, 565 n. 5 (5th Cir.1986) ("Even though an appellee has not filed a cross appeal, he may take the position on appeal that the record supports the court's judgment on any ground, including one rejected or ignored in the lower court.").

ests, even if it results in a breach of that contract, without incurring tort liability." *Id.* By analogy, then, a party to a business relationship should be free to pursue its own interests in negotiating leases, even if the negotiations result in a perceived bad deal for the other party, without incurring tort liability. Lee recognized that in negotiating shopping center leases, he and Wal-Mart had competing interests. He wrote in a letter, for example, "what I need and what you are willing to pay are not the same thing." Lee testified to the same effect at trial:

> Q Okay. Your objective, as the person wanting to develop a store, build it and lease it to Wal-Mart, was to try and get the highest lease term you could that was agreeable to Wal-Mart?
>
> A Correct.
>
> . . . . .
>
> Q But do you agree with me that it would be in Wal-Mart's best interest to try and pay the least possible they could for square foot rental?
>
> A Yes, sir.

Arguing that *Crim Truck* does not control this case, Lee makes two assertions. First, unlike the franchisor/franchisee relationship there, he contends that his was "no ordinary contractual relationship" with Wal-Mart; in fact, he did not even seek recovery on a breach of contract theory. Second, he takes refuge in the Court's admonition that under Texas law the existence of a fiduciary relationship is usually a question of fact. *Crim Truck*, —— S.W.2d at ——, citing *MacDonald v. Follett*, 180 S.W.2d 334, 339 (1944).

█ The first argument is easily answered. Business relationships do not fit a neat dichotomy between those which are "ordinary contractual relations" and those which are fiduciary.[7] The Texas Supreme Court has described non-traditional fiduciary or confidential relationships as arising

*"where one person trusts in and relies upon another, whether the relation is a moral, social, domestic or purely personal one." Fitz–Gerald v. Hull*, 237 S.W.2d 256, 261 (1951) (citing 54 Am.Jur. Trusts § 225, p. 173) (emphasis in original). This description conspicuously omits even a reference to business relations. Further, as the court observed in *Crim Truck*,

> Although a fiduciary duty encompasses at the very minimum a duty of good faith and fair dealing, the converse is not true. The duty of good faith and fair dealing merely requires the parties to "deal fairly" with one another and does not encompass the often more onerous burden that requires a party to place the interest of the other party before his own, often attributed to a fiduciary duty.

—— S.W.2d at ——. Thus, even sophisticated businessmen such as Lee may choose to conduct their affairs on a handshake, without formal written contracts, but their counterparts do not necessarily become fiduciaries because of that choice.

Lee's second contention as to *Crim*, his reliance on the jury finding of a fiduciary relationship, is more potent simply because we rarely overturn a properly instructed jury verdict.[8] *Crim Truck* itself, however, reversed a trial court finding of a fiduciary relationship. While we are confident that the Lee–Wal–Mart relationship would not be fiduciary under the facts of *Crim Truck*, that state supreme court decision incorporated a long line of previous cases, some of which approved findings of fiduciary relations. On careful review, those earlier decisions exhibit certain patterns alien to this case.

In earlier cases in which the Texas Supreme Court found fiduciary relationships, the alleged fiduciaries were looking for profit from a shared risk, *e.g.*, an oil and gas well, or the sale of particular property.[9] Here, Lee's profit was to be obtained

---

7. Certain relationships embody fiduciary responsibilities as a matter of law: those of partners, attorney-client, principal-agent. See *Crim Truck*, —— S.W.2d at ——.

8. There is no question that the jury was properly instructed on the issue of fiduciary duty.

9. *See, e.g., Schiller v. Elick*, 240 S.W.2d 997, 1000 (Tex.1951); *Fitz Gerald v. Hull*, 237 S.W.2d 256, 261 (Tex.1951); *MacDonald v. Follett*, 180 S.W.2d 334, 339 (Tex.1944); *Gaines v. Hamman*, 358 S.W.2d 557 (1962).

in his capacity as developer-landlord, while Wal–Mart profited from its retail sales. The parties' positions, harmonized for purposes of self-interest, were yet naturally antagonistic. In some cases, the court went out of its way to characterize the parties' relationship as a close, personal, family-like tie.[10] Here, the parties dealing with each other were corporations; even if corporations can stand in a fiduciary relationship, there is no testimony of social friendship or emotional or personal dependency by Lee on Wal–Mart's representatives. Finally, it is often pointed out that a fiduciary must put the interests of the beneficiary ahead of his own, if need be. *See, e.g. Crim Truck,* — S.W.2d at ——. In previous cases, this has meant that the fiduciary was obliged to share profits on a deal after he reneged on a promise to allow the plaintiff to participate. See cases cited at notes 9 and 10, *supra.* When Wal–Mart's express purpose for signing leases at *its* break-even rate was to enable it to obtain a store from a developer for about the same cost it could have built one, and when Lee acknowledged that this structure did not generate profit from Wal–Mart itself, but rather from tenants in the associated shopping center, it can hardly be said that Wal–Mart undertook to look out for Lee's best interests. Yudof, Contorts and the Muddled Quest for Bright Lines, publication pending. (facts of the contractual dealings illuminate the question of fiduciary duty).

One Texas Supreme Court case has rejected a fiduciary finding where the parties' interests were, as here, inherently at odds. In *Thigpen v. Locke,* 363 S.W.2d 247 (Tex.1963), Thigpen was Locke's banker, his bookkeeper, a shareholder and member of the board of Locke's grocery store company, and a long-time personal friend. Thigpen lent Locke money, and the lawsuit arose over deeds Locke executed in connection with the loan. The supreme court refused to hold that Thigpen was a fiduciary, concluding that "mere subjective trust" would not convert an arms-length,

debtor-creditor transaction into one of trust. 363 S.W.2d at 253. *See also Consolidated Gas & Equip. Co. v. Thompson,* 405 S.W.2d 333, 336 (Tex.1966) ("The fact that parties have had prior dealings with one another ... does not establish a confidential relationship."); *Rutherford v. Exxon Co., USA,* 855 F.2d 1141, 1146 (5th Cir.1988) ("nothing unusual" in the dealings between Exxon and Rutherford which "created a relationship characterized by confidence and trust").

We are accordingly persuaded that despite the broad and rather vague test the Texas courts employ to determine a nontraditional fiduciary or confidential relationship, Lee's course of dealing with Wal–Mart does not fulfill the test as applied to the facts of previous Texas cases.

Lee and Wal–Mart had no "confidential relationship." Thus, Lee may not recover from Wal–Mart for breach of fiduciary duty. This conclusion simplifies but does not end our analysis of the case. The jury independently found that Wal–Mart procured the 1986 leases and lease termination agreements on both the Daingerfield and Paris properties, and the sale of the Paris property, by "duress or fraud." As to the Paris property, they found that Lee ratified the transaction despite his knowledge of Wal–Mart's duress or fraud, but they did not make the same finding as to the Daingerfield property.

■ Because of the ratification findings, Lee may be able to sustain a verdict on the Daingerfield property, but not on the Paris property. Lee objected to the ratification issue only on the basis that, predicated on a violation of fiduciary duty, ratification is not an affirmative defense to Wal–Mart's duress or fraud. *Delano v. Kitch,* 663 F.2d 990, 999 (10th Cir.1981) (interpreting Kansas law). As there is no longer a fiduciary duty issue in the case, Lee's argument fails. He cannot sustain a verdict on the Paris transaction.

■ The Daingerfield transaction remains, however, a source of possible recov-

---

**10.** *See, Schiller, supra; Fitz-Gerald, supra* (prospective joint venturers); *Texas Bank and Trust*

*Co. v. Moore,* 595 S.W.2d 502, 507 (Tex.1980).

ery for Lee if (a) fraud or duress have a sufficient evidentiary foundation, (b) the jury's determination of lack of ratification is supported by the record and (c) the jury finding of estoppel does not preclude recovery. We are unable fully to resolve these questions and must accordingly reverse for further proceedings. The principal difficulty is that we cannot glean record support for a proper fraud finding. Contrary to the apparent assumption both of Lee and Wal–Mart,

> An interrogatory encompassing two issues or issues in the alternative constitutes reversible error if the interrogatory is ambiguous or if one of the issues is incorrectly submitted to the jury. *See Prudential Insurance Co. v. Morrow*, 339 F.2d 411 (C.A.5, 1964) ...

*Dougherty v. Continental Oil Co.*, 579 F.2d 954, 960 (5th Cir.1978). Based on our review of the record and Lee's briefs to this court, the fraud theory, submitted as an alternative to the duress theory, *see* n. 5 *supra*, appears to have been premised on Wal–Mart's having persuaded Lee to sign the termination of lease agreements without reading them or Wal–Mart's having misled him as to the scope of the releases contained in those documents. A fiduciary who hornswaggles his beneficiary in this way commits fraud. *Moreau v. Oppenheim*, 663 F.2d 1300, 1310 (5th Cir.1981); *Safety Casualty Co. v. McGee*, 127 S.W.2d 176, 177 (1939). Such conduct is not otherwise actionable, for the law presumes that a person reads and understands the contracts he signs. *Fina Supply, Inc. v. Abilene Nat'l Bank*, 726 S.W.2d 537 (Tex. 1987). If the verdict rested on the fiduci-

ary duty theory, it could not support a judgment.

 There may, however, be evidence sufficient to support a jury verdict in Lee's favor for economic duress. We are not certain whether this claim also rested on the assumption of a fiduciary duty or whether, if it did not, the criteria for economic duress under Texas law are all satisfied.[11] Further, the parties' briefs did not enlighten us nor has preliminary research revealed whether the jury's estoppel finding may be a defense to economic duress. These are concerns that can most effectively be sorted out on remand to the trial court.

As we see it, the court must first determine the exact criteria of an affirmative claim for recovery based on economic duress under Texas law. See n. 11. Then, the court must consider whether there was sufficient evidence, under the *Boeing* standard, to support a verdict for Lee on economic duress—apart from any fiduciary duty breach by Wal–Mart. If there is such evidence, a new trial will be necessary, and the subsidiary issues noted above may have to be resolved.

### III.

### CONCLUSION

For the foregoing reasons, we have determined that no fiduciary duty existed between Lee and Wal–Mart. Although no judgment could be entered for Lee on this claim or on the fraud claim which assumed the existence of a breach of fiduciary duty, Lee may have asserted a claim for economic duress that will support a judgment. Because so much of the trial turned origi-

---

**11.** Economic duress is defined as a tort in Texas, *Housing Authority of City of Dallas v. Hubbell*, 325 S.W.2d 880, 902 (Tex.Civ.App.—Dallas 1959, writ ref. n.r.e.), although few Texas cases have awarded recovery on this "tort." *But see State Nat'l. Bank v. Farah Mfg. Co.*, 678 S.W.2d 661 (Tex.App.—El Paso 1984, writ dism. by agr.). The test for duress includes the following factors:

> (1) there can be no duress unless there is a threat to do some act which the party threatening has no legal right to do; (2) there must be some illegal exaction or some fraud or deception; (3) the restraint must be imminent

and such as to destroy free agency without present means of protection. (Citing cases.) *Tower Contracting Co., Inc. of Texas v. Burden Bros., Inc.*, 482 S.W.2d 330, 335 (Tex.Civ.App.—Dallas 1972, writ ref'd. n.r.e.) Further, economic duress can be claimed only when the party against whom it is claimed was responsible for a claimant's financial distress. *First Texas Sav. Ass'n. of Dallas v. Dicker Center, Inc.*, 631 S.W.2d 179, 185–86 (Tex.Civ.App.—Dallas 1982). The jury interrogatory and charge on economic duress did not incorporate all of these elements. Ratification is a defense to a claim of economic duress. *Id.* 186.

nally on the fiduciary duty question, and because fraud and duress were submitted as alternative theories in one jury interrogatory, we must vacate and remand for further proceedings as above described.

The judgment of the district court is AFFIRMED in part, VACATED and REMANDED in part.