For the foregoing reasons, the district court's order is AFFIRMED.

**Robert EVANS and Robert Evans Tours, Inc., Plaintiffs–Appellants,**

v.

**UNITED AIR LINES, INC., and United Air Lines Service Corp., Defendants– Appellees.**

No. 92–2065.

United States Court of Appeals, Fifth Circuit.

March 26, 1993.

Jeffrey W. Hitt, Jeffrey W. Steidley, Olivier & Steidley, Houston, TX, for plaintiffs-appellants.

John Zavitsanos, Baker & Botts, Houston, TX, for defendants-appellees.

Before REYNALDO G. GARZA, HIGGINBOTHAM, and BARKSDALE, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

Robert Evans and Robert Evans Tours, Inc., (collectively "Evans") appeal from an adverse summary judgment granted in favor of United Airlines, Inc., and United Air Lines Service Corp. (collectively "United"). The district court improperly dismissed all of the plaintiffs' claims without notice on a partial summary judgment motion submitted by the defendants. Because the defendants' motion, and the court's opinion, did not address all of the plaintiffs' claims we must reverse the summary judgment and remand as to those claims. However, the summary judgment is affirmed as to those issues that were properly before the court, except as to the fraudulent misrepresentation claim, which was dismissed based on an errant view of the law.

## BACKGROUND

This case arises out of the relationship between Evans, a wholesale ticketing agent, and United. Evans marketed ski vacations in Colorado. Originally, Evans acted as a retail sales travel agent. However, in 1984, Evans assumed the role of ski wholesaler. Although Evans did not have a written contractual relationship, it operated under the assurances of United.

Evans' vacations were packaged deals that included airfare, lodging, and ski passes. The principal reason that these deals were packaged was to obscure the cost of the airfare from the retail travel agents. In essence, without a written contract, Evans relied on United to sell him bulk air fare at a substantial discount. Indeed, in Evans' mind, if he did not get a discount there would be no reason for travel agents to contract with him.

Early in 1985, Evans began negotiating a bulk fare contract in which he attempted to secure low airfare rates in order to package in his deals for the upcoming season. There were numerous offers and counteroffers made with United. Evans knew that the people he was bargaining with were small players and that ultimate approval of any deals would have to come from the main office in Chicago.

As the 1985–86 ski season approached Evans found himself without a bulk fare contract. Forced by the nature of his business to sell packages early on in the season, Evans began selling packages without the protection of a contract to "lock in" any particular rate. Evans contends that he was placated by United representatives who told him "we will take care of you" and "trust us."

As Evans began selling his packages he was given seats by United at what was then an indeterminate rate. Late in November the airline industry engaged in a large scale price war. The prices that were available to the public dropped below the rate at which Evans was able to obtain tickets, thus ruining his competitive advantage and rendering his packages less desirable.

Although prior negotiations between the two had produced price reductions, United would not lower its prices again. Evans was faced with a situation where he needed to ticket packages that were already booked. Therefore, on January 24, 1986, he signed a contract under which 1600 flights were ticketed. Evans then waged the present suit alleging: (i) promissory estoppel; (ii) trademark infringement; (iii) fraudulent misrepresentation; (iv) negligent misrepresentation; (v) breach of fiduciary duty; (vi) intentional interference with business relations; (vii) tortious interference with contract; and (viii) gross negligence.

The defendants responded to the plaintiffs' claims with what was entitled a "partial summary judgment" motion. In the

motion, the defendants argued that Illinois law governed the dispute because of a choice of law clause in the contract that was eventually signed.[1] The court narrowed the issues to whether: (i) the contract was valid; (ii) United breached the contract; (iii) United had a fiduciary duty to Evans; and (iv) United engaged in fraudulent misrepresentation.

The district court reasoned that United was entitled to remain steadfast in its negotiations. Consequently, the court found that there was no duress sufficient to undo the otherwise valid contract. Further, the court rejected the contention that the contract embodied an implied provision to provide tickets at 20% below the market. The court then found that there was not a fiduciary relationship between Evans and United, just an arms-length business relation. The court dismissed Evans' fraud claims on the ground that promises made to do something in the future do not amount to fraud.

The court did not even mention the plaintiffs' trademark, estoppel, tortious interference with contract, or intentional interference with business relations claims in its opinion. Further, none of these claims had been mentioned in the defendants' partial summary judgment motion. Despite the foregoing, the district court entered a take nothing judgment against Evans on November 19, 1991. The plaintiffs now appeal.

## DISCUSSION

Essentially, Evans contends that the summary judgment was improvidently granted from a procedural standpoint. Evans has not mounted any meaningful attack as to most of the substance of the

district court's opinion. After carefully reviewing the opinion we find that it is correct as to the claims it has discussed, except with regard to the plaintiffs' fraudulent misrepresentation claims.

### i. Summary Judgment as to the Claims not Addressed by the District Court.

■ Stepping back, United's response to Evans' pleadings was a partial summary judgment motion. Although United argues that it was a partial summary judgment motion only because it did not cover its own counterclaims, it in fact did neglect to address many of plaintiffs' claims. The appellant then contends that either: (a) it did not receive sufficient notice for the court to grant summary judgment; or (b) the court did not properly have the power to dismiss all of plaintiffs' claims because they were not raised in the defendants' response. These contentions rest on the notion that *sua sponte* summary judgment may not be granted on grounds not urged by the respondent, unless the non-movant receives notice and is given an adequate opportunity to respond. Fed.R.Civ.P. 56(c); *John Deere Co. v. American Nat'l Bank*, 809 F.2d 1190, 1191–92 (5th Cir.1987).

In fact, the defendants' motion for partial summary judgment: (i) argued that Illinois law applied; and (ii) neglected to mention many of plaintiffs' contentions. Therefore, the defendants' argument, that its motion was entitled "partial" only because it did not cover the counterclaim, is misplaced. The appellants have a valid contention that a procedural error occurred when the court addressed the remaining issues without the defendant raising them,[2]

---

**1.** The district court held that Texas law rather than Illinois law applies. However, the court incorrectly attributed the argument to Evans when in fact it was United that couched its entire partial summary judgment motion in Illinois law. Neither party has raised the issue on appeal; consequently, it is waived.

**2.** The appellee points to *McCarty v. United States*, 929 F.2d 1085, 1088 (5th Cir.1991) as support for *sua sponte* dismissal. Evans points to *John Deere Co. v. American Nat'l Bank, Staf-*

*ford*, 809 F.2d 1190, 1191–92 (5th Cir.1987) to support his contention that *sua sponte* dismissal must be preceded by 10 days notice. It is true that summary judgment may be granted *sua sponte;* however, in this case their was no notice given that the court intended to grant summary judgment as to all claims. Further, the defendants' motion was entitled "partial" so the plaintiffs were not necessarily on notice that they could be dismissed entirely.

the court mentioning them, nor without adequate notice.[3]

The defendants' motion for partial summary judgment and the court's opinion failed to address Evans' claims for: (i) negligent misrepresentation; (ii) gross negligence; (iii) promissory estoppel; (iv) tradename infringement; and (v) tortious interference with contract. United's contentions that appellants were on notice and that summary judgment was in retrospect proper both necessarily fail. Therefore, as to the previous five claims, which went unmentioned below, the summary judgment was premature and wholly improvident.

#### ii.  Economic Duress.

■ The appellants argue that economic duress is inherently a factual issue that precludes the application of summary judgment. The court properly construed the facts most favorably to the plaintiffs, and still concluded that United had a right to bargain aggressively. The court correctly noted that if Evans were in such a bad position he could have purchased lower priced tickets on the market. In fact, Evans did buy some of those tickets, but he apparently needed more tickets than were available at those lower rates. The court below properly found that no issue of material fact precluded summary judgment as to the plaintiffs' economic duress contentions.

#### iii.  Breach of Fiduciary Duty.

■ Both parties recognize that the Supreme Court of Texas decision *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591 (Tex.1992), establishes the current state of Texas law in the fiduciary area. In *Lee v. Wal–Mart Stores, Inc.*, 943 F.2d 554 (5th Cir.1991), our court discussed *Crim Truck.* The *Lee* court stated that Lee and Wal–Mart did not have "a confidential relationship which would give rise to a fiduciary duty." *Lee,*

943 F.2d at 557. In doing so the court reasoned:

*Crim Truck* held: [t]he fact that one businessman trusts another, and relies upon his promise to perform a contract, does not give rise to a confidential relationship. According to Lee, the facts also show that Lee and Wal–Mart had repeatedly dealt informally with each other in a series of similar transactions over a period of ten years.

*Crim Truck* held: Neither is the fact that the relationship has been a cordial one, of long duration, evidence of a confidential relationship.... *Crim Truck* reaffirmed that a party to a contract is free to pursue its own interests, even if it results in a breach of that contract, without incurring tort liability.... By analogy, then, a party to a business relationship should be free to pursue its own interests in negotiating leases, even if the negotiations result in a perceived bad deal for the other party, without incurring tort liability.

*Id.* at 557–58.

Indeed, this case presents a similar situation where Evans trusted United without the protection of a contract. Further, Evans had been in the business for long enough to realize that he was "naked" without a contract. Significantly, Evans chose to proceed on a risky course and in the end that risk materialized into a bad situation. However, none of the foregoing establishes a fiduciary relationship. Once again, the district court was correct in dismissing the plaintiffs' fiduciary claims.

#### iv.  Fraudulent Misrepresentation.

The court stated that "[f]raud cannot be based on misrepresentations about events that will happen in the future, or on failure to perform a promise to do something in the future. One of the elements of a cause of action for fraud is statement of material *past* or *present* fact." (emphasis in original). The court assumed that the represen-

tations were made and that Evans relied on them, then it dismissed the claims because the representations were merely promised future performance. The appellees contend that: (i) Evans did not produce evidence of a material fraud; (ii) Evans' reliance was unjustified because they dealt with lower level employees; and (iii) Texas law does not allow claims based on future predictions.

The appellants argue that this was not a case of future predictions, such as "it will be worth something." One should not be permitted to lie about action to be taken in the future if they know that it may produce reliance. In fact, Texas law provides that a promise of future performance can be actionable, provided that it was false at the time it was made. *See Schindler v. Austwell Farmers Cooperative,* 841 S.W.2d 853, 854 (Tex.1992) (per curiam).

Appellants do point to Texas case law stating that assurances of something that will be done in the future coupled with failure to act are some evidence of a misrepresentation. *See, e.g., Dominguez v. Brackey Enters., Inc.,* 756 S.W.2d 788, 792 (Tex.App.—El Paso 1988, *writ denied*). However, on this record it is not clear whether in fact Evans justifiably relied on the local representatives in Dallas. Evans must also prove that the United employees had no intention of fulfilling their promises at the time they were made. In the final analysis, these two aspects of Evans' claims may bar recovery; however, it is too premature to make such a determination at this juncture. The district court improvidently dismissed the fraudulent misrepresentation claims because it found that promises of future performance are not actionable—this is not the law in Texas.

## CONCLUSION

The district court dismissed the plaintiffs' case without requiring the defendant to jump through the proper procedural hoops. If the defendants had properly addressed each of the plaintiffs' claims in their motion to dismiss, then the district court's action would have been more defensible. However, as the case currently stands, the court below has dismissed numerous claims that are not addressed in either the defendants' motion or the court's opinion. The court correctly held that there was no fiduciary relationship and economic duress. However, the fraudulent misrepresentation claims were dismissed based on an incorrect view of the law. Therefore, we AFFIRM the district court's findings as follows: (i) there was no breach of contract; (ii) there was no economic duress; and (iii) there was no fiduciary relationship. However, we REVERSE and REMAND Evans' claims that were not addressed by the district court's opinion: (i) negligent misrepresentation; (ii) gross negligence; (iii) promissory estoppel; (iv) trademark infringement; and (v) tortious interference with contract. Further, we REVERSE and REMAND the summary judgment as to the fraudulent misrepresentation claims only as to the ground forwarded by the district court.