# Supreme Court of Texas

No. 23-0427

Pitts, et al.,
*Petitioners*,

v.

Rivas, et al.,
*Respondents*

On Petition for Review from the
Court of Appeals for the Fifth District of Texas

JUSTICE HUDDLE, joined by Justice Lehrmann, Justice Bland, and Justice Young, concurring.

The Court correctly holds that the anti-fracturing rule bars Rudolph Rivas's fraud claim against his accountants and their firm. I also agree with the Court's conclusion that Rivas's breach of fiduciary duty claim fails because, on the undisputed facts, "there was no fiduciary duty to breach." *Ante* at 15. I therefore join the Court's opinion. But I feel compelled to add some observations about the theory Rivas advanced to support his claim for breach of fiduciary duty.

In a nutshell, Rivas asserted that while the law does not technically regard the accountant–client relationship as fiduciary in

nature, a fact-finder could nevertheless find that a fiduciary relationship and corresponding duties materialized because Rivas's accountants, Brandon and Linda Pitts, were close personal friends in whom Rivas developed subjective feelings of trust and confidence. This sort of theory—that an "informal" fiduciary duty may arise based on a "special" or "confidential" business or social relationship that the law does not recognize as fiduciary in nature—is routinely advanced. It also routinely fails, as it has today, and for good reason.

The law imposes fiduciary duties when a person has undertaken a particular role that the law regards as fiduciary in nature (trustee, guardian, executor, corporate director, to name a few). The common thread among these roles is that they afford the fiduciary—the person in that role—a high degree of control over the legal, financial, and, in some cases, deeply personal affairs of another. It is this legally recognized power to direct another's affairs that justifies the imposition of heightened legal duties, which serve to check the fiduciary's potential abuse of his sometimes vast legal authority over another.

In my view, these weighty duties cannot sprout into existence *absent* evidence that one has undertaken a role that Texas law recognizes as fiduciary in nature. In other words, the concept our cases describe as an "informal" fiduciary relationship is a fiction we should no longer entertain. The Court should lay to rest the idea that fiduciary duties could arise absent a legally recognized fiduciary relationship merely because one party, with the benefit of hindsight, invokes the vague label "relationship of special trust and confidence" to describe his business, family, or personal relationship gone awry. *Schlumberger*

*Tech. Corp. v. Swanson*, 959 S.W.2d 171, 176 (Tex. 1997); *see Lee v. Wal-Mart Stores, Inc.*, 943 F.2d 554, 559 (5th Cir. 1991) (describing "the broad and rather vague test the Texas courts employ to determine a nontraditional fiduciary or confidential relationship").

A fiduciary duty is an "onerous burden that requires a party to place the interest of the other party before his own." *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 594 (Tex. 1992).[1] Texas law recognizes many fiduciary roles,[2] and I have no quarrel with imposing extraordinary duties on those who undertake them. *See Johnson v. Peckham*, 120 S.W.2d 786, 788 (Tex. 1938) ("When persons enter into fiduciary relations each *consents*, as a matter of law,

---

[1] *See also Tex. Bank & Tr. Co. v. Moore*, 595 S.W.2d 502, 512 (Tex. 1980) (Greenhill, C.J., dissenting) (describing a fiduciary duty as an "onerous burden"); *Floors Unlimited, Inc. v. Fieldcrest Cannon, Inc.*, 55 F.3d 181, 188 (5th Cir. 1995) ("Under Texas law, a fiduciary duty will not be lightly created, as it imposes extraordinary duties. The party owing the duty in a fiduciary relationship must put the interests of the beneficiary ahead of its own if the need arises." (footnote omitted)); *Meinhard v. Salmon*, 164 N.E. 545, 546 (N.Y. 1928) (Cardozo, J.) (observing that a fiduciary "is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior.").

[2] *See Austin Tr. Co. v. Houren*, 664 S.W.3d 35, 45 (Tex. 2023) (trustees and executors); *Ritchie v. Rupe*, 443 S.W.3d 856, 868 (Tex. 2014) (corporate directors); *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 200 (Tex. 2002) (agents); *Bohatch v. Butler & Binion*, 977 S.W.2d 543, 545 (Tex. 1998) (partners); *Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex. 1988) (attorneys). Some relationships are categorized as fiduciary by statute. *See, e.g.*, Tex. Bus. Orgs. Code § 22.221 (corporate directors); *id.* § 152.204 (partners); Tex. Est. Code § 351.101 (executors or administrators of estates); *id.* § 751.101 (attorney in fact or agent appointed by a durable power of attorney); *id.* § 1151.151 (guardian of an estate); Tex. Prop. Code § 82.103(a) (officers and board members of a condominium unit owners' association); *id.* § 111.004(4) (trustees).

3

to have his conduct towards the other measured by the standards of the finer loyalties exacted by courts of equity." (emphasis added)).

In these contexts, heightened legal duties are justified because the fiduciary is empowered—if not to direct, at least to impact—the rights and affairs of others. But the same is not true in the context of so-called "informal" fiduciary relationships. The construct is flawed because the so-called "informal" fiduciary wields no legal authority to direct another's affairs that could justify a corresponding heightened fiduciary duty. The Court's refusal to find that an informal fiduciary duty arose in any case in almost fifty years, despite the theory's frequent invocation, proves it is time to disavow the notion that "certain informal relationships may give rise to a fiduciary duty." *Crim Truck*, 823 S.W.2d at 594.

The Court first alluded to the concept in *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509 (Tex. 1942). That case involved a self-dealing agent.[3] The principal–agent relationship has long been recognized as fiduciary, so the Court had no need to expand the concept of fiduciary relationships to include "informal" relationships. Yet it did so, in exceedingly broad terms:

> The term 'fiduciary' is derived from the civil law. It is impossible to give a definition of the term that is comprehensive enough to cover all cases. Generally speaking, it applies to any person who occupies a position of peculiar confidence towards another. It refers to integrity and fidelity. It contemplates fair dealing and good faith, rather than legal obligation, as the basis of the

---

[3] *See Brewer & Pritchard*, 73 S.W.3d at 200 (describing *Kinzbach Tool* as a case "in which an agent diverted an opportunity from the principal or engaged in competition with the principal").

transaction. The term includes those *informal relations which exist whenever one party trusts and relies upon another*, as well as technical fiduciary relations.

*Id.* at 512–13 (emphasis added).

The Court referenced this passage several times over the following two decades, recognizing that abuse of a confidential, informal relationship can justify imposing a constructive trust.[4] However, the existence of such a relationship was not enough; rather, that remedy was limited to cases presenting "an abuse of confidence rendering the acquisition or retention of property by one person unconscionable against another." *Fitz-Gerald v. Hull*, 237 S.W.2d 256, 261 (Tex. 1951) (quoting 54 AM. JUR. *Trusts* § 225 (1945)). In this context, a constructive trust is an appropriate equitable remedy for "an abuse of either a technical fiduciary relationship or of an informal relationship where one person trusts in and relies upon another, whether the relation is a moral, social, domestic, or merely personal one."[5] *Id.* (emphasis omitted)

___

[4] *See Fitz-Gerald v. Hull*, 237 S.W.2d 256, 262 (Tex. 1951) ("[T]he circumstances which give rise to a constructive trust may or may not involve a fiduciary relation." (quoting RESTATEMENT (FIRST) OF RESTITUTION § 160 cmt. a (AM. L. INST. 1937))).

[5] *See MacDonald v. Follett*, 180 S.W.2d 334, 338 (Tex. 1944) (recognizing that a constructive trust was appropriate when one joint venturer abused a "relation of trust and confidence" regarding overriding royalty interests under a lease); *Mills v. Gray*, 210 S.W.2d 985, 988 (Tex. 1948) (explaining that a constructive trust can arise where the transferor of real property had a confidential relationship to the transferee and the transferee breached an oral promise to reconvey the land); *Fitz-Gerald*, 237 S.W.2d at 264 (acknowledging that a constructive trust is appropriate when one joint venturer appropriated title to an oil and gas lease in his own name in violation of his promise to the other joint venturers); *Schiller v. Elick*, 240 S.W.2d 997, 1000 (Tex. 1951) (concluding that evidence of a confidential relationship existing before the sale

(quoting 54 AM. JUR. *Trusts* § 225). But this history does not justify imposing heightened legal duties on nonfiduciaries when a constructive trust is not sought.[6] It does not follow that, because an abuse of an

of property was sufficient to support a constructive trust even if the evidence did not establish the purchaser was acting as the seller's agent); *Omohundro v. Matthews*, 341 S.W.2d 401, 410 (Tex. 1960) (affirming imposition of a constructive trust against one who obtained leases in his own name in violation of a confidential relationship with other joint venturers); *Gaines v. Hamman*, 358 S.W.2d 557, 560 (Tex. 1962) (concluding there was a fact issue whether a confidential relationship existed and a constructive trust should be imposed when one party to a series of agreements to acquire oil and gas interests used information from those earlier agreements to obtain an interest for himself).

[6] The last time the Court found that a fiduciary duty arose from an informal relationship was in 1980, in a case involving a nephew who, in handling the affairs of his incapacitated aunt, "converted her property to his use." *Moore*, 595 S.W.2d at 504. The Court embraced "the accepted rule that where trust is reposed and substantial benefits gained equity will recognize that the beneficiary in such transactions is a fiduciary." *Id.* at 508. I question the necessity of that holding, given that the nephew held a power of attorney allowing him to write checks on her accounts, *id.* at 505, and thus owed fiduciary duties arising from his role as her agent. *See Brewer & Pritchard*, 73 S.W.3d at 200 (citing *Kinzbach Tool*, 160 S.W.2d at 513). Chief Justice Greenhill was critical, too, describing it as a "case of bad facts making bad law." *Moore*, 595 S.W.2d at 512 (Greenhill, C.J., dissenting). *Moore*'s reliance on an "informal" theory would be doubly unnecessary today, as the Court has since expressly stated that "[a]n agreement creating a power of attorney creates a fiduciary relationship." *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 231 (Tex. 2019); *see also In re Est. of Miller*, 446 S.W.3d 445, 454–55 (Tex. App.—Tyler 2014, no pet.) ("A power of attorney creates an agency relationship, which is a fiduciary relationship as a matter of law.").

Since *Moore*, this Court has expressed "reluctance to recognize fiduciary relationships, especially in the commercial context," *Willis v. Donnelly*, 199 S.W.3d 262, 278 (Tex. 2006), and repeatedly has declined to impose fiduciary duties based on an informal relationship. *See, e.g.*, *Crim Truck*, 823 S.W.2d at 595–96; *Transp. Ins. Co. v. Faircloth*, 898 S.W.2d 269, 280 (Tex. 1995); *Nat'l Med. Enters., Inc. v. Godbey*, 924 S.W.2d 123, 148 (Tex. 1996); *Schlumberger Tech. Corp.*, 959 S.W.2d at 177; *Associated Indem. Corp. v. CAT Contracting,*

6

informal confidential relationship may justify a constructive trust in equity, abuse of that same relationship also entitles the alleged principal to recover damages at law.

Indeed, this Court has said that "[t]he specific instances in which equity impresses a constructive trust are numberless." *Pope v. Garrett*, 211 S.W.2d 559, 560 (Tex. 1948) (quoting 4 POMEROY'S EQUITY JURISPRUDENCE § 1045 (5th ed. 1941)). And it is well known that courts tend "to construe the term 'confidence' or 'confidential relationship' liberally in favor of the confider and against the confidant, for the purpose of raising a constructive trust on a violation or betrayal thereof." *Mills v. Gray*, 210 S.W.2d 985, 988 (Tex. 1948) (quoting 54 AM. JUR. *Trusts* § 233). When imposing a constructive trust, "the courts are careful not to limit the rule or the scope of its application by a narrow definition of fiduciary or confidential relationships protected by it." *Fitz-Gerald*, 237 S.W.2d at 261 (emphasis omitted) (quoting 54 AM. JUR. *Trusts* § 225). Thus, the fact that an informal relationship can give rise to a constructive trust does not mean that the relationship is fiduciary in the formal sense.

The imprecise standards governing the courts' imposition of an equitable constructive trust are problematic if applied in other contexts. The Court has said that "[n]o rules can be prescribed and no attempt should be made to formulate rules for the measurement of conduct by courts of equity." *MacDonald v. Follett*, 180 S.W.2d 334, 337 (Tex. 1944).

---

*Inc.*, 964 S.W.2d 276, 288 (Tex. 1998); *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674–75 (Tex. 1998); *Meyer v. Cathey*, 167 S.W.3d 327, 331 (Tex. 2005); *Nat'l Plan Adm'rs, Inc. v. Nat'l Health Ins. Co.*, 235 S.W.3d 695, 703–04 (Tex. 2007); *In re Est. of Poe*, 648 S.W.3d 277, 288–89 (Tex. 2022).

The same latitude should not exist when determining whether a relationship is fiduciary in nature.

Fiduciary relationships are defined by the fiduciary's precise, objective *role* and accompanying legal authority to undertake actions on behalf of others—i.e., as a lawyer, trustee, guardian, etc.—without regard to the parties' subjective feelings about the relationship. For example, the Court has held that a partnership remained fiducial despite testimony that the partners' personal relationship itself had become "strained." *Peckham*, 120 S.W.2d at 788.[7] This logic is sound: linking fiduciary responsibilities to defined roles, rather than the vicissitudes of a personal relationship, ensures that fiduciaries can conduct themselves with full knowledge of their obligations—and the consequences of breach. If the strained personal relationship between partners who are fiduciaries is not enough to remove the relationship from the rule that partners owe each other fiducial duties, then a particularly warm and trusting friendship between nonfiduciaries cannot convert theirs into a fiduciary one.

Finally, there is the fact that the law should serve to increase rather than decrease predictability of the consequences of one's conduct. A so-called "informal" fiduciary would have no reason to perceive that he might owe fiduciary obligations if he does not occupy a recognized fiduciary role or undertake such a fiduciary duty by contract. As long as Texas law recognizes the theory of the "informal" fiduciary

---

[7] *Cf. Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex. 1962) ("The existence of the fiduciary relationship is to be determined from the actualities of the relationship between the persons involved.").

relationship, he would only come to know that he bore heightened duties to his friend or acquaintance after the fact, following costly litigation. This Court rightly strives to give Texans far more predictable outcomes. *See Ritchie v. Rupe*, 443 S.W.3d 856, 889 (Tex. 2014) ("In deciding whether to recognize a new common-law cause of action, we must consider whether the new duty would provide clear standards . . . ."); *Twyman v. Twyman*, 855 S.W.2d 619, 629 (Tex. 1993) (Hecht, J., concurring and dissenting) ("The wrongful conduct for which the common law offers redress by an award of damages should be defined by standards sufficiently objective and particular to allow a reasonable assessment of the likelihood that certain behavior may be found to be culpable, and to adjudicate liability with some consistency in the various cases that arise."). When a standard is ill-defined, "vague and subject to so many different meanings in different circumstances," creating an independent legal remedy for the standard's breach is "simply bad jurisprudence." *Ritchie*, 443 S.W.3d at 890. Retaining such a vague standard is no better.

Rebeca A. Huddle
Justice

**OPINION FILED:** February 21, 2025

9