UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 92-5046

_____


MIKE D. LEE, d/b/a
MID-SOUTH INVESTMENT,

                                         Plaintiff-Appellant,

                          versus

WAL-MART STORES, INC.,

                                         Defendant-Appellee.

_____

Appeal from the United States District Court for the
Eastern District of Texas
_____
(September 23, 1994)


Before REAVLEY and GARWOOD, Circuit Judges and LAKE,[*] District Judge.

GARWOOD, Circuit Judge:

     This is a diversity action originally brought by plaintiff-appellant Mike D. Lee (Lee) against defendant-appellee Wal-Mart Stores, Inc. (Wal-Mart) for alleged damages that resulted from two Texas construction projects in the towns of Daingerfield and Paris. At trial, the jury found that Wal-Mart had breached its fiduciary duty to Lee and had committed economic duress and fraud, but that

_____

[*]     District Judge of the Southern District of Texas, sitting by designation.

Lee was estopped to complain about Wal-Mart's acts. The district court entered a take nothing judgment in Wal-Mart's favor, which Lee appealed. We reversed and remanded the judgment concerning the Daingerfield transaction because we determined that Lee may have presented enough evidence to support a jury verdict for economic duress, and it was unclear, if this were so, whether the jury's estoppel finding precluded Lee's recovery. On remand, the district court granted Wal-Mart's summary judgment motion, ruling that Lee had failed to present any evidence of economic duress and in any event he was barred from recovery by the jury's estoppel finding. Lee now appeals the district court's grant of Wal-Mart's summary judgment motion. We affirm.

### Facts and Proceedings Below

The background facts are described in *Lee v. Wal-Mart Stores, Inc.*, 943 F.2d 554, 556-59 (5th Cir. 1991), *corrected, reh'g denied*, 951 F.2d 54 (1992). Since 1975, Lee, an experienced real estate developer, has purchased and developed land sites for shopping centers which he has leased in part to Wal-Mart on a long-term basis. In September 1984, Wal-Mart's real estate manager for Texas, Bill Bothwell (Bothwell), expressed to Lee Wal-Mart's desire to have a store in Daingerfield, Texas. Bothwell told Lee that Wal-Mart was interested in operating a store on a site which was part of an 11.706 acre tract of land (the property) owned by others that was subject to an option to purchase held by two Daingerfield residents.[1] Bothwell asked Lee to get involved in the project and

---

[1]    Lee testified at trial that Wal-Mart initially "anticipated that their building would take up 6.38 acres of the total 11 acre

2

he subsequently entered into a partnership with the two individuals holding the option. On December 17, 1984, the partnership purchased the property.

In January 1985, Lee sent to Wal-Mart his proposed terms for the Daingerfield project. On March 14, 1985, Bothwell sent Lee a letter stating in full:

"Re: Daingerfield, Texas

Dear Mike:

This is to confirm our telephone conversation concerning the subject town that Thomas P. Seay, Sr. Vice President, Real Estate and Construction has agreed to enter into a lease with you on your stie [sic] in Daingerfield for a 1987 opening.

I will prepare a lease, similar to Marshall with the following leasic [sic] items:

| | | |
|---|---|---|
| 1. | Size | 50,966 square foot. |
| 2. | Term | 20 years plus 6 - 5's. |
| 3. | Rent | $3.60 per square foot. |
| 4. | C.A.M. | 15¢ square foot max. |
| 5. | % Rent | 1/2 of 1% of sales after 7th year sales. |

As soon as I get other immediate things taken care of such as Marshall and Sherman, I'll address my attention to Daingerfield."

On March 19, 1985, Lee received standard form leases for the Daingerfield store and two other stores. Lee was told by Bothwell to hold the Daingerfield lease because the final site plans had not been approved.

In November 1985, Wal-Mart's new real estate manager for Texas, Mike Nelson (Nelson), informed Lee that Wal-Mart had never approved a lease for the Daingerfield store. On February 3, 1986,

---

tract." Lee explained that he anticipated constructing a shopping center on the other five acres.

3

Nelson sent Lee a new commitment letter for a smaller store at a lower base rental per square foot, which Lee agreed to. In July, Lee received a lease from Nelson which specified an even smaller store at a lower rental rate than stated in the February 3 letter. On August 1, 1986, Lee signed the lease. The lease specified that Lee was to begin construction of the store on September 1, 1986, but he was unable to do so because he could not secure financing for the project. On September 5, 1986, after his partners refused to contribute their share of capital for the construction project, Lee bought them out and became the sole owner of the property. Near the end of 1986, Lee advised Wal-Mart that he was having difficulty obtaining financing for the construction work, and on January 15, 1987, he proposed to sell the property to Wal-Mart. In response, Wal-Mart sent a letter cancelling the lease because of Lee's failure to commence construction by September 1, 1986. This letter included a lease termination agreement, which Lee signed.

Subsequently, Lee brought suit against Wal-Mart concerning the Daingerfield transaction and another transaction in Paris, Texas. The trial commenced on April 30, 1990. Lee testified that he signed the lease containing the reduced terms because he had purchased the property over a year prior to the lease, and the bank notes on it were coming due. When Lee was asked by his attorney why he did not sue Wal-Mart, he responded that he "was not a one-time developer with Wal-Mart," and he was hoping "that Wal-Mart would come back and . . . make it right." Lee also testified that

4

he still owned the property.[2]

The jury found that as to the Daingerfield transaction, Wal-Mart had breached its fiduciary duty to Lee and had committed fraud and economic duress. However, the jury also found that Lee was estopped to complain about Wal-Mart's acts. The district court entered a take nothing judgment in Wal-Mart's favor, which Lee appealed. On appeal, this Court ruled that Wal-Mart did not owe a fiduciary duty to Lee. *Lee*, 943 F.2d at 557. We also concluded that Lee could not recover under any theory concerning the Paris transaction. *Id.* at 559. As to the Daingerfield transaction, we determined that the lack of a fiduciary duty precluded a finding of fraud, but the evidence presented at trial might still support a finding of economic duress. *Id.* at 560. Therefore, we reversed and remanded the judgment concerning the Daingerfield transaction because that part of the jury's verdict relating to economic duress may have afforded Lee a basis for recovery. *Id.* On remand, the district court granted Wal-Mart's summary judgment motion, ruling that Lee had failed to present any evidence on the elements of economic duress and in any event he was barred from recovery by the jury's estoppel finding. Lee now appeals the district court's grant of Wal-Mart's summary judgment motion. We affirm.

## Discussion

Summary judgment is appropriate if the record discloses "that

---

[2]    Lee testified that he paid approximately $380,000 for the property. He also introduced into evidence an exhibit showing that he was current on his interest payments to the banks which held the notes on the property, and that he had paid all the taxes assessed against it.

5

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). This Court reviews the district court's grant of a summary judgment motion *de novo*. *Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). Summary judgment may be granted unless the nonmoving party on whom the burden of proof at trial rests shows that there exist "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505, 2511 (1986). *See also Celotex Corp. v. Catrett*, 106 S.Ct. 2548, 2552-53 (1986). On this second appeal, we first need to determine if Lee has placed in dispute any facts which could support a finding of economic duress, an issue on which he bears the burden of proof. Since we find he has not, we will not address the secondary issue of whether Lee is estopped from asserting economic duress.

This case was originally remanded partly because of this Court's uncertainty concerning whether Lee had satisfied all of the elements of economic duress. *Lee*, 943 F.2d at 560. This Court has held that under Texas law the tort of economic duress exists only if the following factors are shown: "'(1) there is a threat to do something which a party threatening has no legal right to do; (2) there is some illegal exaction or some fraud or deception; and (3) the restraint is imminent and such as to destroy free agency without present means of protection.'" *Beijing Metal & Minerals v. American Business Ctr.*, 993 F.2d 1178, 1184-85 (5th Cir. 1993) (quoting *Deer Creek Ltd. v. North Am. Mortgage Co.*, 792 S.W.2d 198,

6

203 (Tex. App.SQDallas 1990, no writ)); *see also Brown v. Cain Chemical, Inc.*, 837 S.W.2d 239, 244 (Tex. App.SQ Houston [1st Dist.] 1992, writ denied); *Tower Contracting Co. v. Burden Bros., Inc.*, 482 S.W.2d 330, 335 (Tex. Civ. App.SQDallas 1972, writ ref'd n.r.e.). Furthermore, "the opposing party must be responsible for the financial distress." *Beijing Metal* at 1185; *see also Brown*, 837 S.W.2d at 244 (citing *First Texas Sav. Ass'n of Dallas v. Dicker Center*, 631 S.W.2d 179, 186 (Tex. App.SQ Tyler 1982, no writ)).[3]

Lee argues that when Wal-Mart sent the March 14 commitment letter, it had entered into an enforceable agreement to execute a lease, and therefore its reneging on these proposed lease terms and eventually cancelling the lease altogether were actions that it had no legal right to take. Lee also contends that the economic

---

[3] Lee contends that the first elementSQthreatening to do that which a party does not have the legal right to doSQhas been modified by *State Nat'l Bank v. Farah Mfg. Co.*, 678 S.W.2d 661, (Tex. App.SQEl Paso 1984, writ dism. by agr.). That case could be read as broadening the first element to include not just threatening to do that which a party did not have a legal right to do, but also threatening to do that which is wrongful or in bad faith. *Id.* at 685. However, in that case the parties owed each other a statutory duty of good faith. *Id.* at 681. Such is not the case here (moreover, our prior opinion held there was no fiduciary duty). Furthermore, "We are bound by this Court's prior decisions on what is the law of a state in a diversity case, just as we are bound by prior decisions of this Court on what is federal law." *Newell v. Harold Shaffer Leasing Co.*, 489 F.2d 103, 107 (5th Cir. 1974). Here, *Beijing Metals* defines the Texas tort of economic duress. We note that even though the decision does not consider *Farah*, this circumstance does not change the conclusion that we are bound by our prior decision. *See Broussard v. Southern Pac. Transp. Co.*, 665 F.2d 1387 (5th Cir. 1982) (*en banc*) (holding that "the failure of a prior panel to consider an apparent change in state law of which it was aware . . . does not open the door for a subsequent *panel* to reconsider the prior panel's decision").

coercion behind this threat was the fact that the bank notes that had financed the purchase of the property were coming due, so that he had no choice but to sign the less favorable lease. The district court concluded that Wal-Mart had a right to negotiate a lease that would be unfavorable to Lee, thereby finding by inference that the March 14 letter was not a binding agreement to execute a lease. Wal-Mart argues that the March 14 letter is not an enforceable contract for a lease because it does not provide, among other things, a specific description of the property which is required under the statute of frauds. We agree.

As Lee recognizes, a contract for a lease of real property for more than a year must comply with the statute of frauds. Tex. Bus. & Com. Code § 26.01(b)(4) & (5); Tex. Prop. Code § 5.021; *Duke v. Joseph*, 213 S.W.2d 535 (Tex. Civ. App.SQAustin, 1948, writ ref'd); *"Moore" Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934 (Tex. 1972); *Kmiec v. Reagan*, 556 S.W.2d 567, 569 (Tex. 1977). "Insofar as the description of the property to be conveyed is concerned, the writing must furnish within itself the means or data by which that particular land may be identified with reasonable certainty." *Kmiec* at 569. Lee argues that the March 14 letter identifies the property with reasonable certainty because he owned only one piece of property in Daingerfield. Certainly, "When the grantor is stated to be the owner of the property to be conveyed and it is proved that the grantor owns only a single tract answering the description, the land is identified with reasonable certainty." *Id.; see also Ellett v. McMahan*, 187 S.W.2d 253, 254 (Tex. Civ. App.SQTexarkana 1945, no writ) (holding description to

8

be sufficient where contract related to the only tract of land owned by vendor). However, in this case, Lee was not leasing his entire eleven-acre tract to Wal-Mart. The letter stated that the Wal-Mart store would occupy only 50,966 square feet, and Lee himself testified that the Wal-Mart "building would take up 6.38 acres of the total 11 acre tract." A conveyance of real property is not identified with reasonable certainty if it merely describes the land conveyed as an unlocated partial portion out of a larger tract. *See, e.g., Matney v. Odom*, 210 S.W.2d 980, 982 (Tex. 1948) (holding that the language in a lease that states "Landlord . . . does hereby lease, to tenant, four (4) acres out of the East end of a ten-acre block" did not satisfy the statute of frauds because it failed to describe the property with reasonable certainty); *Ball v. Parks*, 313 S.W.2d 134, 140 (Tex. Civ. App.SQFort Worth 1958, writ ref'd n.r.e.) (holding that "Block 78 Hill County School Land" did not meet test of statue of frauds with reference to contract to convey portion of acreage thereof); *MacLane v. Smith*, 198 S.W.2d 493 (Tex. Civ. App. SQFort Worth 1946, writ ref'd n.r.e.) (holding that the description "1st Tract: 58 acres more or less out of the G. Moseley Survey, Abstract No. 1338" was insufficient to satisfy the statute of frauds). Here, the March 14 letter failed to satisfy the statute of frauds because it did not describe with reasonable certainty the location of the Wal-Mart site within the property owned by Lee.[4]

---

[4] Lee also contends that the March 14 letter created a contract for a lease because Wal-Mart is estopped from asserting the statute of frauds as a defense. Lee relies on *"Moore" Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934 (Tex.

Since Wal-Mart had not entered into an enforceable contract for a lease, Wal-Mart was "free to pursue its own interests in negotiating leases, even if the negotiations result is a perceived bad deal for the other party." *Lee*, 943 F.2d at 558 (citing by analogy *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591 (Tex. 1991)).[5]  Therefore, it could not have illegally extracted from Lee his acceptance of the lease or his later cancellation of that lease.  Since Wal-Mart never entered into a lease or enforceable contract to lease with Lee, and it owed

1972), which held that a written contract to enter into a lease which complied with the statute of frauds was enforceable, even though one of the parties had not signed the contract, and had merely made an oral promise to sign it. *Id.* at 938.  Although the promise to sign the agreement did not comply with the statute of frauds, the court held that the doctrine of promissory estoppel prevented the defendants from asserting the statute of frauds as a defense. *Id.*  However, the Texas Supreme Court has limited the promissory estoppel exception to cases where the promise was "'to sign a written agreement which itself complies with the Statute of Frauds.'" *Nagle v. Nagle*, 633 S.W.2d 796, 800 (Tex. 1982) (quoting *"Moore" Burger*, 492 S.W.2d at 940; *see also Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763, 769 (5th Cir. 1988) (holding that "[i]n *"Moore" Burger* the determinative promise was a promise to sign a written agreement that had already been prepared and that did in fact comply with the statute of frauds").  Here, since the written agreementSQthe March 14 letterSQdoes not comply with the statute of frauds, the *"Moore" Burger* exception is inapplicable.

5    Lee argues that Wal-Mart owed him a duty of good faith and that this duty precluded it from threatening Lee into signing the inferior lease.  Lee apparently bases this duty to act in good faith on the past business conduct of the two parties.  However, "Texas recognizes a duty of good faith and fair dealing where a *special relationship* exists and is governed or created by a contract." *State Farm Mut. Auto. Ins. Co. v. Zubiate*, 808 S.W.2d 590, 597 (Tex. App.SQEl Paso 1991, writ denied) (italics added).  Lee has wholly failed to show how past business dealings constitute such a "special relationship" outside the existence of a fiduciary duty. *Cf., Consolidated Gas & Equip. Co. v. Thompson*, 405 S.W.2d 333, 336 (Tex. 1966) ("The fact that people have had prior dealings with each other . . . does not establish a confidential relationship.").

no particular duty to Lee, Wal-Mart could not have committed the tort of economic duress by "[t]hreatening to do that which [it] has a legal right to do." *Sanders v. Republic Nat'l Bank*, 389 S.W.2d 551, 554 (Tex. Civ. App. SQTyler 1965, no writ). Lee has failed to place any facts in dispute on this issue. On this basis alone the district court's judgment must be affirmed.

Moreover, even assuming that Wal-Mart somehow did not have a legal right to pressure Lee into signing the inferior lease, Lee has also fatally failed to show that there existed an imminent restraint such as to destroy free agency without present means of protection. *Beijing Metals* at 1185. Lee argues that the loans used to purchase the property were coming due, so that he had no alternative but to sign the inferior lease. Lee did testify that he had no alternative, but such a conclusion is insufficient without supporting evidence. *See Bridgen v. Scott*, 456 F.Supp. 1048, 1063 (S.D. Tex. 1978) (holding that "[v]ague, self-serving speculative testimony concerning what a party would have done under different circumstances is generally not admissible").

It is axiomatic that economic coercion exists only if the target of such coercion has no alternative but to submit to it. *See Tower Contracting*, 482 S.W.2d at 336 (holding that because the plaintiff had several days notice of the defendant's allegedly illegal threat, the plaintiff had time to exercise other alternatives). Here, Lee, a sophisticated and successful businessman, has produced no evidence that he had no other options besides entering into the less favorable lease. He could have sued Wal-Mart, and pursued his legal remedies in the courts. His excuse

11

for not filing suit was that Wal-Mart would "make good" later and he did not want to jeopardize his long-term relationship with the company.[6]  In other words, Lee thought it would be profitable to allow Wal-Mart to receive a favorable deal now because he expected to receive a favorable deal in the future.  Far from showing economic duress with no escape, this evidence tends to show that Lee was a willing participant who was hoping for future favorable treatment.  *See Irby v. Andrews*, 211 S.W. 290, 292 (Tex. Civ. App.SQDallas 1919, no writ) (holding that evidence sustained finding that judgment creditor was not induced by duress to satisfy judgment, where the creditor exercised her judgment in the matter).  Furthermore, there is no evidence that he could not have walked away from the unfavorable lease.  Although the bank notes were coming due, there is no evidence that he lacked the financial resources to hold onto the property.  Nor is there any evidence that the banks refused any request of his to refinance or extend the loan on the land.  Perhaps his partners did not have the

---

[6]    Lee did not assert that he failed to pursue his legal remedies because of financial difficulties.  This Court has held that such an unexplained failure, absent evidence of real financial constraints, establishes that the plaintiff has not made a showing sufficient to sustain a finding that he was under imminent restraint such as to destroy his free agency.  In *Beijing Metals*, we held that "[a]side from a general reference to 'cash flow problems,' and a reference to the difficulty and expense of cover, there [was] no evidence in the summary judgment record to indicate that [the plaintiff] could not pursue its legal remedies.  The above conclusory statements are insufficient to establish a material fact issue."  *Id*. at 1185; *see also Hartsville Oil Mill v. United States*, 46 S.Ct. 389, 391 (1926) (holding that the plaintiff had failed to prove its duress claim based on a breach of contract because, in part, it had presented no evidence "that the legal damages for such breach of contract would not have been adequate to compensate for its loss").

12

financial wherewithal to construct the shopping center, but Lee had bought them out, and he presented no evidence concerning his own financial condition. At trial, some five and a half years after the purchase of the property, Lee still possessed the property and was making payments on the notes. Lee has not presented evidence which would sustain a finding that he was subject to a restraint which was imminent and such as to destroy free agency without present means of protection.

Since Lee failed to present any evidence that Wal-Mart had illegally threatened him, and in any event has failed to show that he was under an imminent restraint and had no protection against it, the district court did not err in granting summary judgment in favor of Wal-Mart.

## Conclusion

For the foregoing reasons, the district court's judgment is

AFFIRMED.

13