United States Court of Appeals,

Fifth Circuit.

No. 94-10691.

McCALLUM HIGHLANDS, LTD., Plaintiff-Appellant,

v.

WASHINGTON CAPITAL DUS, INC., Defendant-Appellee.

Oct. 10, 1995.

Appeal from the United States District Court for the Northern District of Texas.

Before HIGGINBOTHAM, SMITH and STEWART, Circuit Judges.

STEWART, Circuit Judge:

McCallum Highlands, LTD., appeals from an adverse summary judgment on an action to avoid certain amended portions of a loan agreement with Washington Capital Dus, Inc. Affirmed in part, vacated in part, and remanded.

*FACTS*

Ari Susman owned an apartment complex, McCallum Highlands, and wanted to refinance its mortgage. In order to refinance at a lower rate of interest through Washington Capital Dus ("Washington"), he reorganized as a limited partnership, McCallum Highlands, LTD, ("McCallum") with himself as general partner. He also obtained an agreement from his previous mortgaging company foregoing a hefty prepayment penalty provided he refinanced by April 30, 1991. Washington is in the business of making loans and then selling them to the Federal Home Loan Mortgage Association ("Fannie Mae").

On January 9, 1991, McCallum accepted Washington's offered loan commitment for $6,700,000 at an interest rate of 9.75% per annum. The loan commitment also provided that McCallum could lower the interest rate through a buy-down process and increase the amount of the loan to Susman's originally requested amount of $7,015,000. This amount of money (allegedly) would allow him to pay off the Hancock mortgage and would also provide some extra capital with which to refurbish McCallum apartments. Susman made a good faith deposit of $134,000 in

acceptance of the loan commitment.

Sometime early in 1991, Fannie Mae changed the guidelines describing what loans they would buy. This change included a provision to grandfather out the kind of loan Susman wanted. The provision required that a borrower like McCallum select the applicable interest rate by April 19, 1991, and that the loan close by April 30, 1991—the same date that Hancock had set as McCallum's final date to avoid the prepayment penalty.

Additionally, Fannie Mae criticized another loan Washington had made to Susman (the "Fountains" loan) because Susman had several properties in default at the time, and was not a good risk. Because of Fannie Mae's criticism, on March 22, 1991—less than one month before closing—Washington told Susman that they wanted to lower the amount loaned, and that they thought they could get out of the commitment through a loophole. Susman told Washington that he expected them to honor their commitment. On April 18 (one day before the April 19 deadline), Washington told Susman that they would allow him to select an interest rate for the McCallum loan only if the maximum amount loaned was limited to $6,400,000 with no buy-down provision. Susman, feeling that he had no choice because he needed to have the loan in place before April 30, signed up for the loan even though (allegedly) the proposed amount, after closing costs, provided less than enough to pay off the previous loan. He claims that Washington's actions amounted to economic duress, resulting in McCallum's bankruptcy, or alternatively, that there was no consideration for the modification of the loan commitment so that it is void, (and Washington is therefore in breach of the original agreement).

The trial court found for Washington on summary judgment with regard to both claims.

## *DISCUSSION*

Texas substantive law governs this diversity suit. See *Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Rule 56 of the Federal Rules of Civil Procedure, however, governs the propriety of summary judgment. Summary judgment shall be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. We

review the district court's summary judgment de novo. *Lee v. Wal-Mart Stores, Inc.,* 34 F.3d 285, 288 (5th Cir.1994). However, we resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994). We do not, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. *Id.* Moreover, unsupported allegations or affidavits setting forth "ultimate or conclusory facts and conclusions of law" are insufficient to either support or defeat a motion for summary judgment. *Galindo v. Precision American Corp.,* 754 F.2d 1212, 1216 (5th Cir.1985).

## A. Economic Duress

To avoid summary judgment on its economic duress claim, McCallum must demonstrate a genuine issue of material fact as to each of the following elements of economic duress required by Texas law: (1) a threat to do something that the threatening party has no legal right to do; (2) some illegal exaction or fraudulent deception; (3) the restraint is imminent and such as to destroy a person's free will without adequate means of protection; and (4) the claimant's financial distress was caused by the party accused of duress.[1] *Simpson v. Mbank Dallas, N.A.,* 724 S.W.2d 102 (Tex.App.—Dallas 1987, writ ref'd n.r.e.).

Elements one and two are very similar: the plaintiff must establish that the defendant threatened to do something he had no legal right to do, and that threat involved an illegal exaction or a fraudulent deception. The law, in general, is that the "threat to break a contract does not in itself constitute duress." *Hartsville Mill v. United States,* 271 U.S. 43, 49, 46 S.Ct. 389, 391, 70 L.Ed. 822 (1926); *Palmer Barge Line v. So. Petroleum Trading Co., Ltd.,* 776 F.2d 502, 505 (5th Cir.1985). Thus, Washington's advising Susman of its belief that there could be loopholes in the loan commitment is not sufficient to constitute economic duress. Moreover, as regards the second element, the trial court found that there is no summary judgment evidence of illegal exaction or fraud

---

[1]McCallum argues that there is a question as to whether the fourth element is part of the test. This court has plainly held that it is. *Lee v. Wal-Mart Stores, Inc.,* 34 F.3d 285, 289 (5th Cir.1994); *Beijing Metals & Minerals v. American Bus. Ctr.,* 993 F.2d 1178, 1185 (5th Cir.1993).

or deception. There is no showing that Washington did not intend to honor the McCallum commitment when the agreement was originally made. Neither Washington nor Susman could foresee or control Fannie Mae's dissatisfaction with the Fountains loan, or the guidelines change, both of which materially altered the atmosphere surrounding the loans. In renegotiating the loan terms, there is no showing that Washington engaged in any deceptive or fraudulent behavior.

As regards the third element, the district court also correctly held that Susman failed to show an imminent threat that destroyed his free will and against which he had no present means of protection. Given the short amount of time available to him, it is not clear that Susman could or could not have pursued other financing opportunities, but he made no showing that he could not have pursued legal remedies. Thus, McCallum failed to establish that there was an imminent threat which destroyed free will. *Tower Contracting Co., Inc. v. Burden Bros., Inc.,* 482 S.W.2d 330, 336 (Tex.Civ.—Dallas 1972, writ ref'd n.r.e.).

Finally, as regards the fourth element, Susman made no showing other than conclusory allegations that his financial predicament was caused by Washington. Apparently, it was Susman's financial situation that led to his need to refinance the apartments, it was also his financial situation that led to Fannie Mae's criticism of the other loan underwritten by Washington. Washington's renegotiation of the loan may have been the proverbial straw that broke the camel's back, but that does not make Washington responsible for McCallum's financial distress. Moreover, McCallum waited for fifteen months after the amended agreement to allege duress. This court has indicated that a "delay in raising a claim of duress in addition to the existence of a negotiated agreement between parties represented by counsel is compelling evidence that there was in fact no duress." *Palmer Barge Line, Inc., v. Southern Petroleum Trading Co., Ltd.,* 776 F.2d 502, 506 (5th Cir.1985). Thus, because Susman failed to provide evidence for all four elements, summary judgment for Washington on the issue of economic duress was appropriate.

## B. Consideration

McCallum argues that it was provided no consideration for signing Amendment Three to the loan commitment. Consideration is a present exchange bargained for in return for a promise. *Roark*

*v. Stallworth Oil and Gas, Inc.,* 813 S.W.2d 492, 496 (Tex.,1991) (citation omitted). It consists of either a benefit to the promisor or a detriment to the promisee. *Id.* The detriment must induce the making of the promise, and the promise must induce the incurring of the detriment. *Id.*

In general, under the "pre-existing duty rule," an agreement to do what one is already bound to do cannot serve as "sufficient consideration to support a supplemental contract or modification." *Signs v. Bankers Life & Casualty Co.,* 340 S.W.2d 67, 73 (Tex.Civ.App.—Dallas, 1960, no writ). This rule usually comes in to play when one party becomes unhappy with the contract as agreed upon and wants to change it. 3 WILLISTON ON CONTRACTS § 7:36 (1992). He has to offer some new consideration to the other party to induce that other party to agree to the change. Thus, merely offering the preexisting duty he had already contracted to perform cannot serve as consideration for the change. *See Okemah Construction, Inc., v. Barkley-Farmer, Inc.,* 583 S.W.2d 458, 460 (Tex.Civ.App.—Houston [1 Dist.], 1979, no writ).

In the case at bar, Washington became unhappy with the McCallum commitment when Fannie Mae criticized the prior loan. The loan as amended was not in accord with the initial agreement, and Washington claims that original agreement was properly modified with new consideration. The trial court, citing *Taylor v. Bonilla,* 801 S.W.2d 553, 556 (Tex.App.—Austin 1990, writ denied), found that the Amendment imposed new mutual obligations on both McCallum and Washington, and that this constituted sufficient consideration: McCallum gave up its right to receive a larger loan amount and Washington gave up its right to receive the additional money in repayments. The trial court's finding of new consideration is erroneous because there was no showing made by Washington that this exchange was bargained-for.

In *Taylor v. Bonilla,* an insured agreed to surrender an old whole life policy as well as to pay an additional premium in exchange for a new term policy. He then died after applying for the term policy and accepting payment of the cash value of the whole life policy but before making the first premium on the term policy. The issue was whether the insurance company had received consideration for the term policy. *Taylor v. Bonilla,* 801 S.W.2d at 555-557. Both parties had deliberately, and thoughtfully participated in negotiating this agreement. *Id.* The court held that the

consideration the insurance company had received was partly a release from the obligations of the old policy, and partly the new premium, for which the company had bargained. The consideration that the insured received was the new policy for which he had deliberately bargained. Applying the rationale of *Taylor,* the instant issue is whether Susman bargained for and received some new consideration in exchange for accepting a lower loan amount with more restrictions, not whether he received consideration for the agreement as modified.

Another reason that Washington's argument that McCallum benefitted by having less to repay cannot be regarded as new consideration is because the amended commitment recites different terms for initiation, not just less money due under the contract. In the amended contract, Susman was not allowed to pick the interest rate, or determine the amount of money loaned, or opt for the "buy-down" provision as he had been in the initial contract. The only thing Susman received in exchange for giving up these rights is a smaller loan. Moreover, by asserting that the good will of Washington and Fannie Mae could serve as consideration for the modification, Washington is asserting that this good will was a motivating factor inducing Susman's agreement. Again, McCallum has urged and Washington has not contradicted that Susman did not agree to the modification for any reason other than that he could not obtain alternative financing at that late date.

Washington additionally argues that, as consideration for the modification, Washington gave up the right to assert its claims that it had no obligation to loan any money to McCallum Highlands. Certainly, if there is an honest dispute over the interpretation of the original agreement, its settlement can furnish sufficient consideration for a new promise. 3 WILLISTON ON CONTRACTS § 7:36 (4th Ed., 1992). However, there is nothing in the record showing that McCallum bargained for the surrender of this right. McCallum has urged and the appellees have not contradicted that Susman believed the contract to be binding on both parties as written and that he expected Washington to honor its commitment as written.

Because no bargained-for consideration was granted to Susman in exchange for his agreement to modify the loan commitment, the issue then becomes whether one of the exceptions to the requirement of new consideration applies. Parties can agree to first rescind an original agreement,

and subsequently enter into a new one, thus avoiding the new-consideration requirement. *See Blaylock v. Akin,* 619 S.W.2d 207, 209 (Tex.Civ.App.—Texarkana, 1981, writ ref'd n.r.e.); *Crossland v. Nelson Auction Service, Inc.,* 424 S.W.2d 318, 319 (Tex.Civ.App.—Amarillo, 1967, writ ref'd n.r.e.). However, where an alleged rescission is coupled with a simultaneous re-entry into a new contract and the terms of that new contract are more favorable to only one of the parties, doubt is created as to the mutuality of the agreement to rescind the original contract. 3 WILLISTON ON CONTRACTS § 7:37 (1992). Lurking beneath the surface in such cases is an implied threat by the promisor to withhold performance unless he receives the additional compensation or other changes he wants. *See id.* Moreover, this exception is based on circular logic because the validity of the new agreement depends upon the rescission while the validity of the rescission depends upon the new agreement. 1A CORBIN ON CONTRACTS § 186 (1963). As a result, the validity of this exception to the preexisting duty rule has been questioned by a number of authorities. *See e.g.,* 3 WILLISTON ON CONTRACTS § 7:37; 1A CORBIN ON CONTRACTS § 186 (1963), RESTATEMENT (SECOND) OF CONTRACTS § 89 comment b (1981); JOHN D. CALAMARI & JOSEPH M. PERILLO, CONTRACTS 206 (3d ed. 1987). Because the rescission of the original commitment occurred simultaneously with the creation of the amended loan agreement, and because the terms were more favorable to Washington than McCallum, the facts of this case place it neatly into the category of cases where this exception is most criticized.

A more appropriate exception to the preexisting duty rule is presented in § 89 of the Restatement Second of Contracts:

A promise modifying a duty under a contract not fully performed on either side is binding

(a) if the modification is fair and equitable in view of circumstances not anticipated by the parties when the contract was made.

RESTATEMENT (SECOND) OF CONTRACTS § 89 (1981). Whether a modification is fair and equitable goes beyond absence of coercion and requires an objectively demonstrable reason for seeking a modification. Id. at § 89 cmt. b. The reason for modification must rest in circumstances not anticipated when the contract was made. *Id.* When such a reason is present, the relative financial strength of the parties, the formality with which the modification is made, the extent to which it is

performed or relied on and other circumstances may be relevant to show or negate imposition or unfair surprise. *Id.*

This exception to the requirement of new consideration for a modified contract is integrated into Texas law. *See Wiedeman v. Howell,* 276 S.W.2d 380, 383 (Tex.Civ.App.—Austin, 1955, writ ref'd n.r.e.); *Allied Chemical Corporation v. DeHaven,* 752 S.W.2d 155, 159 (Tex.App.—Houston [14 Dist.], 1988, writ denied). Fannie Mae's criticism of the earlier loan was such an unforeseen circumstance, but we conclude that, to use the language in the Restatement, the modification was not "fair and equitable" to McCallum.

We conclude, as a matter of law, that McCallum did not receive consideration for agreeing to the modification of the original loan commitment thus the entry of summary judgment on this ground was error by the trial court. Accordingly, we AFFIRM IN PART, VACATE IN PART, and REMAND for further proceedings consistent with this opinion.