Connie EDWARDS, et al.

v.

YOUR CREDIT, INC.

Civil Action No. 96–3226–B–M1.

United States District Court,
M.D. Louisiana.

July 7, 1997.

Daniel A. Edelman, Louise T. Walsh, Edelman & Combs, Chicago, IL, Garth Jonathan Ridge, Baton Rouge, LA, for Plaintiff.

Claudia Sue Dunn, Pickering, Cotogno, Delsa & Dunn, New Orleans, LA, Harold D. Stratton, Jr., Stratton & Cave, Albuquerque, NM, for Defendant.

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

POLOZOLA, District Judge.

This matter is before the Court on a motion for summary judgment filed by Your Credit, Inc. ("Your Credit"). For reasons which follow, the motion is GRANTED. ·

### OVERVIEW

This suit was originally filed by Connie Edwards ("plaintiff")[1] asserting a claim under Louisiana law and the Truth in Lending Act ("TILA").[2] Thereafter, Edwards filed an amended complaint dropping the original claim for a violation of Louisiana law. Thus, the only claim pending against Your Credit is a claim for a violation of TILA.

Edwards contends Your Credit is in violation of TILA because Your Credit is charging a $20 premium for general default insurance,[3] and is failing to include this premium in the "finance charge." Edwards also argues there is an implicit agreement that payment of insurance claims by the insurance company shall be limited to 89.25% of premiums paid. Therefore, Edwards asserts the "insurance" is not really insurance at all since there is no shifting of risk. In response to Edwards' arguments, Your Credit contends the $20 premium is for non-filing insurance,[4] and is properly excluded from the "finance charge" under TILA. While Your Credit denies claims are limited to 89.25% of premiums paid, Your Credit argues that even if there is such a limit, such does not disqualify the policy as "insurance" under Louisiana law. In the alternative, Your Credit contends the McCarran–Ferguson Act ("MFA")[5] preempts TILA in this case. The Court now turns to a discussion of the above arguments.

### ANALYSIS

1. *Summary Judgment Standard*

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment."[6] The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial."[7] A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate

---

1. Edwards seeks to file this suit as a class action. As of the date of this ruling, the Court has not ruled on Edwards' motion to certify this suit as a class action.

2. 15 U.S.C. § 1601, et seq.

3. The purpose of general default insurance is to protect against losses due to the failure of borrowers to repay their loans.

4. Non-filing insurance mitigates a lender's losses for failing to perfect a security interest in a transaction.

5. 15 U.S.C. § 1011, et seq.

6. Fed.R.Civ.P. 56(c); *New York Life Ins. Co. v. Travelers Ins. Co.,* 92 F.3d 336, 338 (5th Cir. 1996); *Rogers v. Int'l Marine Terminals, Inc.,* 87 F.3d 755, 758 (5th Cir.1996).

7. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). *See also Gunaca v. Texas,* 65 F.3d 467, 469 (5th Cir.1995).

the elements of the nonmovant's case." [8] If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." [9]

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and "show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial." [10] The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. [11] Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." [12] The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." [13] Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial. [14]

When affidavits are used to support or oppose a motion for summary judgment they "shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." [15] Affidavits that are not based on personal knowledge or that are based merely on information and belief do not satisfy the requirements of Rule 56(e), and those portions of an affidavit that do not comply with Rule 56(e) are not entitled to any weight and cannot be considered in deciding a motion for summary judgment. [16] Neither shall conclusory affidavits suffice to create or negate a genuine issue of fact. [17]

## 2. TILA—Is the policy non-filing or general default insurance?

■ The controversy in this case centers around an insurance policy issued by Voyager Property and Casualty Insurance Company ("Voyager") to Your Credit. Whether the insurance policy is classified as non-filing insurance or general default insurance is important for the purposes of 15 U.S.C. § 1605(d) of TILA [18] and 12 C.F.R. § 226.4(e) of Regulation Z. [19] Essentially, un-

8. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc) (quoting *Celotex*, 477 U.S. at 323–25, 106 S.Ct. at 2553).

9. *Little*, 37 F.3d at 1075.

10. *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1046–47 (5th Cir.1996).

11. *Little*, 37 F.3d at 1075; *Wallace*, 80 F.3d at 1047.

12. *Wallace*, 80 F.3d at 1047. Accord, *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir.1996).

13. *McCallum Highlands v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.), as revised on denial of rehearing, 70 F.3d 26 (5th Cir.1995).

14. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

15. Fed.R.Civ.P. 56(e); *Beijing Metals & Minerals Import/Export Corp. v. American Business Ctr., Inc.*, 993 F.2d 1178, 1182 (5th Cir.1993).

16. *Richardson v. Oldham*, 12 F.3d 1373, 1378–79 (5th Cir.1994).

17. *McCallum Highlands*, 66 F.3d at 92; *Travelers Ins. Co. v. Liljeberg Enterprises, Inc.*, 7 F.3d 1203, 1207 (5th Cir.1993); *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir.1992).

18. § 1605(d) provides as follows:

(d) If any of the following items is itemized and disclosed in accordance with the regulations of the Board in connection with any transaction, then the creditor need not include that item in the computation of the finance charge with respect to that transaction:
(1) Fees and charges prescribed by law which actually are or will be paid to public officials for determining the existence of or for perfecting or releasing or satisfying any security related to the credit transaction.
(2) *The premium payable for any insurance in lieu of perfecting any security interest otherwise required by the creditor in connection with the transaction. If the premium does not exceed the fees and the charges described in paragraph (1) which would otherwise be payable ....* (emphasis added.)

19. § 226.4(e) provides as follows:

(e) *Certain security interest charges.* If itemized and disclosed, the following charges may be excluded from the finance charge:
(1) Taxes and fees prescribed by law that actually are or will be paid to public officials

der § 1605(d) and § 226.4(e), Your Credit may charge Edwards a premium for non-filing insurance. This premium may be included in the "amount financed," as long as the premium is itemized and disclosed and the premium does not exceed fees that actually would be payable to public officials for determining the existence of or for perfecting, releasing, or satisfying a security interest.[20] However, premiums for general default insurance must be included in the "finance charge," and excluded from the "amount financed."

In summary, Edwards argues Your Credit is charging $20 for general default insurance, and is labeling the $20 charge as non-filing insurance. Furthermore, Edwards claims Your Credit is disclosing the general default insurance as a separate itemized portion of the "amount financed,"[21] instead of as a "finance charge."[22] Your Credit contends the $20 charge is used to purchase non-filing insurance. Therefore, Your Credit avers it has properly excluded the $20 charge from the "finance charge," in compliance with both 15 U.S.C. § 1605(d)(2) and 12 C.F.R. § 226.4(e), because the $20 charge is separately itemized.

■ Edwards contends the insurance policy between Voyager and Your Credit is general default insurance. Edwards does not base this contention on the language of the policy, but instead bases this argument on the claims payment history between Voyager and Your Credit. The language of the policy provides as follows:

> ... the Company hereby undertakes and agrees to indemnify the Insured against any direct loss that the Insured may during the period (as stated in the Agreement) sustain in manner hereinafter mentioned:
>
> By reason of having in good faith and in the usual course of business purchased, taken, received, made advances on, made loans against or extended credit upon an instrument, as hereinafter defined, as security for a loan to a customer of the Insured but only insofar as the Insured is damaged through being prevented from:
>
> a. obtaining possession of the property represented by such Instrument and/or retaining the proceeds thereof and/or
>
> b. enforcing its rights under such Instrument
>
> solely as the result of the failure of the Insured duly to record or file the Instrument with the proper public officer or public office.[23]

According to the language in the policy, it is clear the insurance policy purchased with the $20 premium is non-filing insurance and not general default insurance. Edwards does not dispute this fact. Instead, Edwards argues the claims payment history between Voyager and Your Credit indicates that Your Credit uses the policy as general default insurance and not as non-filing insurance. Specifically, Edwards argues a necessary prerequisite to claiming a loss under the Voyager policy is that Your Credit must make an attempt to repossess collateral and be prevented from doing so solely because Your Credit did not file a UCC–1 financing statement to perfect its security interest. Edwards documents a number of cases where Your Credit collected on the non-filing insurance policy without satisfying the above prerequisites.[24] In essence, Edwards makes

---

for determining the existence of or for perfecting, releasing, or satisfying a security interest.

*(2) The premium for insurance in lieu of perfecting any security interest to the extent that the premium does not exceed the fees described in paragraph (e)(1) of this section that otherwise would be payable ....* (emphasis added.)

**20.** Note: The parties have not addressed whether, in this case, the $20 charge is in excess of the fees that actually would be payable to public officials for determining the existence of or for perfecting, releasing, or satisfying a security interest.

**21.** *See* 15 U.S.C. § 1638(a)(2) for definition of "amount financed."

**22.** *See* 15 U.S.C. § 1605(a) and 12 C.F.R. § 226.4(a) for definition of "finance charge."

**23.** Defendant's Memorandum in Support of Summary Judgment ("Def.'s Memo"), Appendix C, Exhibit 1.

**24.** Edwards cites the following instances where Your Credit made claims, but did not comply with the above prerequisites: (1) Your Credit made claims without attempting to repossess collateral; (2) Your Credit made claims without attempting to verify whether there existed a

an unusual and surprising argument. Edwards actually complains that, instead of allowing Edwards to keep her collateral, Your Credit should have attempted to repossess Edwards' property before Your Credit claimed a loss on its non-filing insurance policy. The Court is somewhat puzzled by the fact that, in order to have her debt paid, Edwards would rather have her property repossessed by Your Credit than have Your Credit make a claim against the non-filing insurance policy. It would appear to the Court that Your Credit did Edwards a favor by allowing her to keep her property and allowing the policy to take care of the debt. Notwithstanding the Court's skepticism of Edwards' position, the Court will address the merits of Edwards' argument.

Since the Court has decided the language of the policy clearly and unambiguously establishes the policy is a non-filing insurance policy, the issue before the Court is whether the policy has been "reformed" under Louisiana law from non-filing insurance into general default insurance. In support of its motion for summary judgment, Your Credit submitted the deposition of Tom E. McCraw, Senior Vice President of Operations for Voyager. In his deposition, McCraw testified Voyager does not underwrite general default insurance.[25] McCraw also testified he does not know of any insurance company that underwrites general default insurance.[26] McCraw stated insurance companies do not underwrite general default insurance because "the creditor would have no incentive to collect any of his loans if he knew he was going to collect them through default insurance."[27] Thus, the Court will assume, for purposes of this discussion of the reformation issue, that

general default insurance does in fact exist as an insurance product.

"As other written agreements, insurance policies may be reformed if, through mutual error or fraud, the policy as issued does not express the agreement between the parties."[28] Edwards has not alleged fraud in this case, but "[i]n the absence of fraud, the party seeking reformation has the burden of proving a mutual error in the written policy."[29] In this case, there is no evidence of mutual error between Voyager and Your Credit. Specifically, in reviewing the depositions of McCraw and Tony Gentry, President of Your Credit, the Court finds there was no mutual error when the parties contracted the policy of non-filing insurance. Both Voyager and Your Credit intended the policy to be non-filing insurance.[30] Edwards has not presented any evidence to the contrary. As such, the Court further finds the non-filing insurance policy has not been reformed into general default insurance. Thus, even though Voyager may be paying claims for which it may not be liable under the terms of the non-filing policy with Your Credit, the mutual intent of both Voyager and Your Credit was that the insurance policy between them be a non-filing insurance policy.

In conclusion, the Court holds the insurance policy between Voyager and Your Credit is non-filing insurance. "An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provision beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion."[31] The language of the policy clearly and unambiguously indicates the policy is

---

UCC–1 financing statement with priority to Your Credit's UCC–1 financing statement; and (3) Your Credit made claims based solely on the fact another creditor filed a superior UCC–1 financing statement without attempting to ascertain whether the collateral would satisfy the debt underlying both security interests. See Plaintiff's Memorandum in Opposition to Summary Judgment ("Ptf.'s Memo") at 7–8.

**25.** Defendant's Reply Memorandum in Support of Motion for Summary Judgment ("Def.'s Reply Memo"), Appendix C, pp. 44–45.

**26.** Def.'s Reply Memo, Appendix C, p. 44.

**27.** Def.'s Reply Memo, Appendix C, p. 44.

**28.** W. McKenzie & H. Johnson, 15 Civil Law Treatise, Insurance Law and Practice § 5, p. 14 (1996) (citations omitted).

**29.** W. McKenzie & H. Johnson, 15 Civil Law Treatise, Insurance Law and Practice § 5, p. 14 (1996) (citations omitted).

**30.** See Def. Is Reply Memo, Appendix B (Deposition of Gentry) Appendix C (Deposition of McCraw).

**31.** *LIGA v. Interstate Fire & Cas. Co.,* 630 So.2d 759, 763 (La.1994).

intended to be non-filing insurance and not general default insurance. To interpret the policy so as to enlarge the coverage to include general default insurance would be unreasonable and achieve an absurd result. This is particularly so when the evidence before the Court establishes that general default insurance does not even exist as an insurance product in the insurance industry. In addition, since the evidence fails to establish mutual error between Voyager and Your Credit, the policy has not been reformed from non-filing insurance to general default insurance. If Voyager is paying claims under the policy for which it is not liable, then Voyager has a cause of action against Your Credit to recover these claims. Voyager's decision to pay a claim it may not be required to pay does not constitute a violation of TILA or Regulation Z.

■ Moreover, since the Court has held the policy is for non-filing insurance, and since Your Credit has separately disclosed and itemized the $20 premium as non-filing insurance in the "amount financed" section of the promissory note,[32] the $20 premium was properly excluded from the "finance charge" pursuant to 15 U.S.C. 1605(d) and 12 C.F.R. § 226.4(e).

3. *TILA—Does the non-filing insurance policy shift the risk of loss from Your Credit to Voyager?*

■ In addition to the above arguments, Edwards argues there is an implicit agreement between Voyager and Your Credit that limits the losses claimed under the non-filing insurance policy to approximately 89.25% of premiums paid. This is called a "stop-loss" provision. Edwards argues the "insurance" is not really insurance since there is no shifting of the risk because Your Credit simply submits claims for any kind of loss under the non-filing insurance policy, up to approximately 89.25% of the premiums paid, to the insurer. Your Credit counters there is no "stop-loss" provision or limitation of risk in the policy. Both Edwards' and Your Credit's arguments hinge on the deposition testimony of McCraw. McCraw stated that 89.25% is Voyager's "expected loss ratio" on the non-file product.[33] McCraw also testified there was no agreement that losses were limited to 89.25%. Instead, McCraw only hoped that Your Credit would meet the target loss ratio of 89.25%.[34] The 89.25% expected loss ratio is maintained because Voyager expects to make a 10.75% profit on the account.[35] McCraw also stated he did not know whether Your Credit was even aware of the 89.25% loss ratio which Voyager expected on the Your Credit account.[36] In addition, Tim Boan, Secretary–Treasurer of Consumer Insurance Associates, Inc. ("CIA")[37] stated the 89.25% figure is an "internal thing where we look at each [insurance] product and try to determine what [profit] we need to make out of a product...."[38]

Based on the above evidence, the Court finds there is no implicit agreement that claims made by Your Credit may not exceed 89.25% of premiums paid. Voyager has calculated that, in order for the non-filing insurance to be a profitable product, claims made by Your Credit must approximate 89.25% of the premiums paid by Your Credit. The Court finds that the 89.25% figure is an internal figure used by Voyager to gauge the profitability of its relationship with Your Credit, and is not a limit on the claims Your Credit may file.[39] Thus, the risk of loss has been shifted to Voyager and the non-filing insurance is in fact a valid insurance product.

---

**32.** Def.'s Memo, Exhibit A.

**33.** Def.'s Reply Memo, Appendix C, pp. 11–12.

**34.** Def.'s Reply Memo, Appendix C, pp. 11–12.

**35.** Def.'s Reply Memo, Appendix C, p. 12.

**36.** Def.'s Reply Memo, Appendix C, p. 12.

**37.** CIA collects premiums and administers claims on behalf of Voyager for the non-filing policies.

**38.** Def.'s Reply Memo, Appendix A, pp. 15–16.

**39.** If Your Credit's claims exceed 89.25% of the premiums paid on a consistent basis, Voyager would have to decide whether to cancel the non-filing insurance policy with Your Credit because the relationship with Your Credit would have proven less profitable than expected.

Anyway, "[u]nder Louisiana law, insurers have the power, through unambiguous and clearly noticeable provisions, to limit their liability and to impose reasonable conditions upon their obligations, so long as the limitations and conditions imposed do not conflict with statutory law or public policy." [40]

### 4. *McCarran-Ferouson Act*

In the alternative, Your Credit contends that, if the $20 charge for non-filing insurance violates TILA because it should have been disclosed in the "finance charge," then under the McCarran–Ferguson Act ("MFA"),[41] TILA does not apply.[42] Since the Court has decided that Your Credit has not violated TILA, the merits of this argument will not be addressed.

### 5. *Conclusion*

To summarize, the Court finds the insurance policy between Voyager and Your Credit is non-filing insurance and not general default insurance. The Court further finds the risk of loss has been properly shifted from Your Credit to Voyager. Since Your Credit separately itemized and disclosed the $20 premium for non-filing insurance as a portion of the "amount financed," the $20 premium was properly excluded from the "finance charge" pursuant to 15 U.S.C.A. § 1605(d) of TILA and 12 C.F.R. § 226.4(e) of Regulation Z.

Therefore:

IT IS ORDERED that Your Credit's motion for summary judgment be and it is hereby GRANTED. Judgment shall be entered dismissing Edwards' suit with prejudice.

---

**40.** *Scarborough v. Travelers Ins. Co.*, 718 F.2d 702, 707 (5th Cir.1983).

**41.** 15 U.S.C. § 1011, et seq.

**42.** According to 15 U.S.C. § 1012(a) of MFA, "the business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business."